UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JUDITH D. HINES,
        Plaintiff,

v.                                          Case No.  8:12-cv-2910-T-24-EAJ

DELTA FAMILY-CARE DISABILITY
AND SURVIVORSHIP PLAN, et al.,
        Defendants.
_____/

**ORDER**

This cause comes before the Court on Plaintiff Judith D. Hines's Motion for Summary Judgment (Dkt. 53), to which Defendants Delta Family-Care Disability and Survivorship Plan (the "Plan") and Sedgwick Claims Management Services, Inc. ("Sedgwick") filed a response in opposition (Dkt. 57).  Also before the Court is Defendants' Motion for Summary Judgment (Dkt. 56), to which Hines did not file a response.

**I.**        **BACKGROUND**

        **A.**        **Factual Background**

                **1.**        **The Plan**

The Plan is an employee welfare benefits plan, which provides short-term disability ("STD") and long-term disability ("LTD") benefits and is governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq*. ("ERISA").[1]  Delta Air Lines, Inc. ("Delta") makes contributions to the Plan to fund the benefit payments. (Dkt. 56, Schultz Decl., Ex. A, Plan §§ 11.02, 11.04.)  Delta's Administrative Committee (the "Committee") is the named fiduciary and is granted the discretionary authority to determine benefit eligibility and

---

[1] The applicable version is the Plan as amended and restated effective April 1, 2006.  The first amendment to the Plan, effective January 1, 2007, amended the provisions regarding disability benefits.

interpret the Plan's provisions. (*Id*. at § 12.02.) The Committee also has the power to delegate its fiduciary responsibilities to members other than the Committee. (*Id*. at §§ 12.02, 12.04.) The claims administrator, Sedgwick Claims Management Services, Inc. ("Sedgwick"), is the third-party administrator to whom the Committee delegated its claims decision-making and other administrative duties with respect to STD and LTD benefits under the Plan. (*Id*. at §§ 1.09A, 4.05; Dkt. 56, Schultz Decl., Ex. B, Master Servs. Agmt. § 4.1.)

To receive LTD benefits under the Plan, claimants must prove that they meet the Plan's definition of "disabled." What a claimant must prove to establish disability depends on how long she has received benefits. During the first six months of coverage, a claimant would be "disabled" if she shows that she had an injury or disease that made her "unable to engage in her customary occupation" and suffer an earnings loss. (Plan § 4.01(b)(ii)(A), (b)(iii).) After this initial six-month LTD period, the claimant would be "disabled" only if she showed that her injury made her unable "to perform any Gainful Occupation," which is an occupation for which she "is, or may become, qualified by reason of education, training or experience" and "for which the potential for earnings is expected to be 50% (60%, if enrolled in the Long-Term Disability Buy-Up coverage option) . . . or less" of her pre-disability earnings. (*Id*. at §§ 4.01(b)(ii)(B).)

    **2. STD and LTD Benefits (August 2009 to November 22, 2010)**

Hines was employed by Delta as a customer services agent until she injured her right wrist after moving a patio door in August 2009. (Hines 110-11, 153).[2] Hines subsequently applied for STD benefits under the Plan. In November 2009, Hines began seeing Dr. Thomas Greene, a hand surgeon, who diagnosed her with a lunotriquetral ligament injury to her right

---

[2] Citations to the administrative record are given by referencing the bates stamp number of the document. (Dkt. 56, Schultz Decl., Ex. D.)

2

wrist. (Hines 94-96.) Sedgwick approved her application, and she received STD benefits for six months, the maximum period permitted under the Plan.

Hines also submitted a claim for LTD benefits under the Plan, which Sedgwick approved effective February 16, 2010. (Hines 153-60.) Over the ensuing months, Sedgwick requested medical documentation from Dr. Greene, Hines' treating physician, to monitor whether she still had a disability under the Plan. A blank disability form, titled "physical demands," was attached to Sedgwick's request. (Hines 162-65.)

The responses Sedgwick received were largely completed disability forms and office treatment chart notes. For example, Dr. Greene's chart notes, dated March 24, 2010, diagnosed Hines with "instability, wrist, right, lunotriquetral," (Hines 171) and described her condition as follows:

> Pain is located at the distal radioulnar joint, the ulnar carpus. Pain is described as aching intermittent. Pain is made worse by extension of the wrist. Swelling has been located ulnarly, has been variable. No crepitus is noted with motion. Overall, the right wrist problem is improving.

(Hines 170). Further, Hines "continues to use a right wrist splint part time." (*Id*.) In the completed disability form, dated March 26, 2010, Dr. Greene stated that Hines was restricted to 10 to 20 pounds of lifting, carrying, pushing/pulling, and other hand actions (single grasping, firm grasping, and fine manipulation), and no crawling. (Hines 166-67). When asked to provide a date to return to work with restrictions, Dr. Greene stated "11/02/09." (Hines 168.) Further, Dr. Greene stated that the duration for the work restrictions was "unknown." (*Id*.) When asked to provide a treatment plan for recovery, Dr. Greene stated "home exercise program" and "therapy." (*Id*.) In his June 16, 2010 chart notes, Dr. Greene stated that Hines was considering

3

surgery. (Hines 195.) Sedgwick extended Hines' benefits through August 14, 2010. (Hines 72-73.)

In May 2010, Sedgwick sent a letter to Hines informing her that in order for Hines to continue to be eligible for LTD benefits after August 15, 2010, Hines must meet the Plan's post-six-month-definition of disability. (Hines 172).

### 3. Termination of LTD Benefits (Effective November 23, 2010)

On August 5, 2010, Hines had surgery on her right wrist. (Hines 221-22). Sedgwick continued to request medical documentation from Dr. Greene, and received completed disability forms. Sedgwick extended Hines' LTD benefits to October 31, 2010. (Hines 59.)

In a Physical Capacities Examination ("PCE"), dated October 22, 2010, Dr. Greene stated that Hines could return to work with restrictions on October 25, 2010. (Hines 241-42). Specifically, Hines could lift/carry and push/pull up to 10 pounds on an occasional basis, but she could never crawl. (*Id.*) Further, she could use her right hand to perform fine manipulation and single grasping, but she could not perform firm grasping. (*Id.*) Dr. Greene's chart notes stated that he "discussed a home exercise program" with Hines, and that he recommended hand therapy, which "she refused for financial reasons." (Hines 244.)

After receiving Dr. Greene's PCE, Sedgwick requested Genex Services, Inc. ("Genex") to conduct a Traditional Skills Analysis ("TSA") and a Labor Market Survey ("LMS") to determine whether Hines had the ability to return to work in any occupation with a gainful wage (60% of her earnings) based on her education, work history, described physical restrictions, and employment opportunities in the labor market in her geographical area. The TSA and LMS, dated November 14, 2010 and November 18, 2010 respectively, determined that Hines was

qualified for two other occupations and identified at least two existing positions in the Tampa area. (Hines 246-62).

Sedgwick sent a letter to Hines, notifying her that her benefits were terminated effective November 23, 2010. (Hines 268-69.) Sedgwick stated that its determination was based on Dr. Greene's PCE, which "indicated that [Hines] [was] able to lift/carry/push/pull up to 10 pounds and could continuously bend, stoop, squat, kneel, balance, twist and reach," and "use both hands for fine manipulation and simple grasping." (Hines 268.) Sedgwick also stated that it considered the TSA and LMA, which determined that Hines was able to perform another gainful occupation under the Plan. (*Id*.)

#### 4. First request for review

Hines appealed the November 23, 2010 termination of LTD benefits. (Hines 272.) In a letter dated December 15, 2010, Hines pointed to the following as reasons that she disagreed with the benefits decision: the August 5, 2010 surgical report and the post-surgery office visits with Dr. Greene between August 16, 2010 and November 17, 2010. (Hines 276-86.) Hines submitted the surgical report and stated that "Dr. Greene's post surgery report to Sedgwick identifies restrictions and/or limitations," and that "no medical course of action to improve R-Hand mobility" or the cause of swelling and sensitivity has been identified. (Hines 278.) Hines also noted that "I am able to type for short periods of time with both hands, but can not use my R-Hand (Dominant Hand) for writing." (Hines 279.)

In her December 15, 2010 letter, Hines reported that she had visited a new doctor, Dr. Francisco Schwartz-Fernandes, on December 8, 2010. (Hines 279.) Hines attached Dr. Schwartz-Fernandes' request for an MRI, dated December 9, 2010, and an authorization for release of information. (Hines 282-83.)

Attached to a letter dated December 23, 2010, Hines sent Sedgwick progress notes from her December 22, 2010 visit with Dr. Schwartz-Fernandes. (Hines 287-92). In those notes, Dr. Schwartz-Fernandes opined that Plaintiff had neuroma, wrist pain, and late effect of complication of surgical and medical care. (Hines 289). For "work status," Dr. Schwartz-Fernandes stated that "Light Duty with splint, until the next visit," but that "if there is no one handed duty as determined by the employer then we recommend being off work until the next visit." (*Id.*)

Sedgwick referred Hines' claim to Dr. Martin G. Mendelssohn, a board-certified orthopedic surgeon, for an independent review. Dr. Mendelssohn issued a report, dated January 4, 2011. (Hines 377-82.) In that report, Dr. Mendelssohn stated that he had a teleconference with Dr. Greene, who "stated that he had the patient on light duty for a long time." (Hines 377.) The report also summarized Dr. Mendelssohn's review of Hines' medical documentation, including documents from Dr. Greene and Dr. Schwartz-Fernandes. Dr. Mendelssohn concluded that Hines's "subjective complaints do not warrant a disability from any occupation and the documentation does not provide objective findings to support the inability of the claimant to perform any occupation for which she may [be] qualified by education, training or experience as of 11/23/10 providing she does not have to do repetitive gripping, grasping, twisting, pushing or pulling of more than 10 pounds." (Hines 381-82).

Sedgwick also requested another TSA and LMS analysis. The TSA report, dated January 19, 2011, identified two qualifying occupations. (Hines 386-390). The LMS report, dated January 21, 2011, identified several positions in those occupations existed. (Hines 396-405.)

In a letter dated January 31, 2011, Sedgwick notified Hines that it had decided to uphold its decision to terminate her LTD benefits effective November 23, 2010. (Hines 417-18.) This

determination was based on Sedgwick's review of medical records from Dr. Greene, Tampa General Hospital, Dr. Schwartz-Fernandes, and Memorial Hospital of Tampa dated August 2009 through December 23, 2010, as well as Dr. Mendelssohn's review of Hines' file, the TSA analysis, and the LMS analysis. (*Id*.)

However, at some point, Sedgwick received supplemental medical records (x-rays and MRIs) from Dr. Schwartz-Fernandes. (Hines 33, 408-14.) Thus, Sedgwick referred Hines' file for additional review by Dr. Mendelssohn based on the supplemental records. In his report dated February 7, 2011, Dr. Mendelssohn stated that he reviewed the supplemental records but that his opinions remained the same. (Hines 426-27.) In a letter dated February 21, 2011, Sedgwick notified Hines of its decision to uphold the denial of benefits. (Hines 435-36.)[3]

### 5. Second request for review

In May 2011, Hines requested a voluntary second-level appeal. (Hines 443.) Hines stated that she intended to provide additional information in support of her claim and requested copies of her claim file, claim guidelines, medical resources, and other documents. (*Id*.). Hines requested several extensions of time to submit additional information and Sedgwick granted those extensions. (Hines 13-14, 461-69.) However, Hines apparently did not submit any additional information. (Hines 14.)

On September 21, 2011, Sedgwick referred Hines' claim to Dr. Victor M. Parisien, a board certified orthopedic surgeon, to perform an independent review of Hines' file. (Hines 13.) In a report dated September 28, 2011, Dr. Parisien stated that he attempted (but was unable to) contact Dr. Greene, and that he reviewed all of Hines' medical documentation. This included

---

[3] The letter appears to contain typos. The letter states that the decision to deny benefits for the period began November 10, 2010 (rather than November 23, 2010), and that Dr. Mendelssohn spoke with Dr. Greene on January 4, 2010 (rather than January 4, 2011).

Hines' claims file, documents from Dr. Greene, Dr. Schwartz-Fernandes, the PCE completed by Dr. Greene, Dr. Mendelssohn's report, and the supplemental x-rays and MRI. (Hines 482-84.) Dr. Parisien concluded the following:

> This patient had an injury to the distal radial ulnar joint and tear of the lunotriquetral ligament. This was treated by dorsal capsulorrhaphy of the wrist on 08/05/10. She continued to be symptomatic following this injury and developed a neuroma on the ulnar boarder of her wrist with some continuing limitation of movement of her wrist with pain on movement. These findings would preclude her from doing her regular unrestricted job; however, she could do the sedentary or light work according to the transferrable skills analysis and according to the work restrictions that have been imposed by her treating surgeon namely light work capacity with no lifting over 10 to 20 pounds. Therefore, she is not disabled from any occupation for which she may be qualified by education, training or experience as of 11/23/10 through [sic] return to work.

(Hines 484).

In a letter dated September 30, 2011, Sedgwick notified Hines of its decision to uphold its termination of her LTD benefits. (Hines 485-86.) This determination was based on the appeals unit's review of medical records from Dr. Greene, Tampa General Hospital, Dr. Schwartz-Fernandes, and Memorial Hospital of Tampa dated August 2009 through January 21, 2011, Dr. Parisien's review, and the previously completed TSA and LMS analyses. (Hines 485-86.)

### B.   Procedural History

Hines, a resident of Hillsborough County, Florida, originally filed this ERISA action in the District of Columbia. (Dkt. 1.) Hines claims that she is entitled to LTD benefits under the Plan from November 22, 2010 to the present. (Dkt. 1.) In December 2012, the District of Columbia granted a consent motion to transfer the case to the Middle District of Florida. (Dkt. 14.) Hines has been proceeding *pro se* since February 14, 2013. (Dkt. 22.)

On April 2, 2013, Defendants filed a unilateral case management report. (Dkt. 29.) The Court scheduled a preliminary pretrial conference, because Hines did not participate in the case management report filed by Defendants. (Dkt. 30.) At the preliminary pretrial conference, which Hines attended, the Court adopted Defendants' proposed schedule. Defendants also stated that they planned to amend their answer to add a counterclaim, seeking reimbursement for overpayment due to Hines' alleged receipt of a retroactive social security disability award.

On July 1, 2013, Defendants moved to file an amended answer and counterclaim, to which Hines never responded. (Dkt. 49.) On August 1, 2013, the Court granted Defendants' motion to amend. On August 5, 2013, Defendants filed an amended answer and counterclaim. (Dkt. 51.) The counterclaim brings an equitable claim under 29 U.S.C. § 1132(a)(3), alleging overpayment due to Hines' receipt of a social security disability award and seeking a judgment requiring Hines to reimburse Defendants for the overpayment.

On August 6, 2013, Hines filed a motion for summary judgment. (Dkt. 53.) Although her summary judgment motion does not appear to address Defendants' counterclaim, she asserts: "Upon extension of her disability benefits, soon thereafter, in July 2010, Ms. Hines applied for Social Security disability benefits. It was required." (Dkt. 53.) On September 3, 2013, Defendants filed a motion for summary judgment as well as a response in opposition to Hines' motion for summary judgment. (Dkts. 56, 57.)

When Hines did not file a timely response to Defendants' motion for summary judgment, the Court entered an order directing her to show cause as to why the Court should not consider Defendants' motion without her response and noting that the "[f]ailure to respond will result in the Court considering the motion to be unopposed." (Dkt. 58.) Hines neither responded to the Court's order nor filed a response in opposition to Defendants' motion for summary judgment.

9

## II. HINES' ERISA CLAIM FOR LTD BENEFITS

### A. Standard of Review for ERISA claims

Where an ERISA plan gives the plan administrator or fiduciary discretionary authority to determine eligibility for benefits, the administrator's decision is reviewed under the arbitrary and capricious standard of review. *Firestone Tire and Rubber Co. v. Bruch,* 489 U.S. 101, 111 (1989). The deferential standard of review applies here because the Plan confers the Committee with discretionary authority. *Gipson v. Admin. Comm. of Delta Air Lines, Inc.*, 350 Fed. Appx. 389, 391-92, 394 (11th Cir. 2009) (applying the arbitrary and capricious standard of review to the denial of benefits decision made by the ERISA plan fiduciary's delegee, and the delegee's and fiduciary's subsequent decisions upholding the denial).[4] To evaluate whether a decision was arbitrary and capricious, a multi-step analysis applies:

> (1) Apply the de novo standard to determine whether the claim administrator's benefits-denial decision is "wrong" (i.e., the court disagrees with the administrator's decision); if it is not, then end the inquiry and affirm the decision.
>
> (2) If the administrator's decision in fact is "de novo wrong," then determine whether he was vested with discretion in reviewing claims; if not, end judicial inquiry and reverse the decision.
>
> (3) If the administrators decision is "de novo wrong" and he was vested with discretion in reviewing claims, then determine whether "reasonable" grounds supported it (hence, review his decision under the more deferential arbitrary and capricious standard).
>
> (4) If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if he operated under a conflict of interest.
>
> (5) If there is no conflict, then end the inquiry and affirm the decision.
>
> (6) If there is a conflict of interest, then apply a heightened arbitrary and capricious review to the decision.

---

[4] The parties do not dispute that this is the proper standard.

*Doyle v. Liberty Life Assurance Co. of Boston,* 542 F.3d 1352, 1360-61 (11th Cir. 2008) (upholding a court's analysis following the above steps after *Metro. Life Ins. Co. v. Glenn,* 554 U.S. 105 (2008)). Hines bears the burden of proving that she was disabled under the terms of the Plan. *Horton v. Reliance Standard Life Ins. Co.,* 141 F.3d 1038, 1040 (11th Cir.1998).

With respect to the sixth step, a "pertinent conflict of interest exists where the ERISA plan administrator both makes eligibility decisions and pays awarded benefits out of its own funds." *Blankenship v. Metro. Life Ins. Co.*, 644 F.3d 1350, 1355 (11th Cir. 2011). However, "the existence of a conflict of interest should merely be a factor for the district court to take into account when determining whether an administrator's decision was arbitrary and capricious." *Doyle,* 542 F.3d at 1360. "[W]hile the reviewing court must take into account an administrative conflict when determining whether an administrator's decision was arbitrary and capricious, the burden remains on the plaintiff to show the decision was arbitrary; it is not the defendant's burden to prove its decision was not tainted by self-interest." *Id.* at 1360.

### B.     The Parties' Motions for Summary Judgment

In her summary judgment motion, Hines argues that Sedgwick's decision to terminate her LTD benefits was wrong for several reasons. First, Hines argues that Sedgwick's decision to terminate her LTD benefits, effective November 23, 2010, was inconsistent with its prior decision to grant her LTD benefits starting in February 2010. Specifically, Hines asserts that no medical documentation shows her condition improved since February 2010, and therefore, her LTD benefits should not have terminated.

The Court rejects this argument because the applicable definition for "disability" differed for LTD benefits during the first six months of eligibility and for LTD benefits following that

11

initial six-month period. From February 16, 2010 to August 15, 2010, Hines was entitled to receive LTD benefits if she could not perform her customary occupation. Because Hines was unable to perform her customary occupation as a customer representative—which required, for example, Hines to lift objects up to 70 pounds (Hines 293)—Hines met the initial six-month-definition for disability. After August 15, 2010, Hines had to show that she was unable perform any occupation for which she was, or could become, qualified based on her education, training, or experience. When, a few months after her August 5, 2010, surgery, Dr. Greene opined that she could return to work subject to the identified restrictions, it was reasonable for Sedgwick to determine that she did not meet the post-six-month-period definition of disability. Further, where both Dr. Mendelssohn and Dr. Parisien concluded that her injury did not render her disabled such that she could not perform any occupation (as long as no repetitive gripping, grasping, twisting, pushing, or pulling of more than 10 pounds was required),[5] Sedgwick's decision to uphold its termination decision was also reasonable.

Next, Hines argues that the denial was not supported by substantial medical evidence because Sedgwick failed to secure a "functional capacity examination" as provided by the Plan. The Court rejects this argument because the Plan does not require such an examination. Rather, the Plan only provides that Hines must cooperate should the claim administrator request Hines to undergo such an examination. (See Plan § 4.05(b)(ii).)

Hines also argues that the TSA and LMA vocational analyses were not based on substantial evidence because they relied on the opinion of Dr. Greene, Dr. Mendelssohn, and Dr. Parisien, while selectively ignoring the findings of Dr. Schwartz-Fernandes. The Court rejects

---

[5] Dr. Parisien described Hines' work restrictions as "light work capacity with no lifting of over 10-20 pounds." (Hines 484.)

this argument because there is no evidence that Dr. Schwartz-Fernandes concluded that Hines was disabled such that she was unable to perform any occupation for which she was or could be qualified. Nor is there evidence that Dr. Schwartz-Fernandes' findings were ignored. Dr. Mendelssohn's report shows that Dr. Schwartz-Fernandes' findings were reviewed and considered. Further, even if Dr. Schwartz-Fernandes' findings somehow suggest that Hines is disabled, Sedgwick was entitled to weigh the evidence and resolve conflicting evidence. *Townsend v. Delta Family-Care Disability & Survivorship Plan*, 295 Fed. Appx. 971, 977 (11th Cir. 2008). The evidence does not show that Sedgwick acted unreasonably in relying on Hines' first treating physician and independent medical opinions or in crediting those opinions over the opinions of Dr. Schwartz-Fernandes. *Blankenship*, 644 F.3d at 1356. Ultimately, where Dr. Greene, Dr. Mendelssohn, and Dr. Parisien all concluded that Hines could return to work subject to the identified physical restrictions, it was neither wrong nor unreasonable for Sedgwick to conclude that Hines was not disabled.

Hines also argues that she could not perform the occupations identified by the TSA and LMA reports because she is right-hand dominant and has lost the ability to write or print with her right hand. However, there is no medical evidence supporting her assertion that she can no longer write or print. Nor is there evidence that the inability to do so renders her unable to perform the occupations identified by the vocational analyses or any other gainful occupation as defined under the Plan.

Finally, Hines suggests that a conflict of interest exists and influenced Sedgwick's decision. However, there is no conflict of interest because Sedgwick does not pay benefits out of its own funds. Even if a conflict of interest were to exist, no evidence shows that Sedgwick was influenced by the conflict. Sedgwick considered the evidence before it, obtained the opinions of

13

two independent board-certified orthopedic surgeons regarding Hines' disability, and obtained vocational analyses. The evidence does not show that Sedgwick's decision was arbitrary or capricious. *See e.g.*, *Keith v. Prudential Ins. Co. of Am.*, 347 Fed. Appx. 548, 552 (11th Cir. 2009) (conflict of interest did not influence decision where the claims administrator considered evidence before it and obtained opinions from independent medical professionals).

As explained above, the Court finds that Sedgwick's decision to terminate Hines' LTD benefits was not *de novo* wrong. However, even if its decision was wrong, the Court finds that reasonable grounds supported it and therefore the decision was not arbitrary and capricious. Accordingly, the Court denies Hines' motion for summary judgment and grants Defendants' motion for summary judgment as to Hines' ERISA claim for LTD benefits.

### III. DEFENDANTS' COUNTERCLAIM FOR OVERPAYMENT

#### A. Standard of Review

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must draw all inferences from the evidence in the light most favorable to the non-movant and resolve all reasonable doubts in that party's favor. *See Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006) (citation omitted).

The moving party bears the initial burden of showing the Court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. *See id.* When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts.

### B. **Defendants' Motion for Summary Judgment**

Defendants allege that, in May 2011, Hines received a retroactive social security disability ("SSDI") award, reflecting her entitlement to monthly SSDI benefits beginning February 2010. Defendants allege that because Hines also received disability benefits under the Plan from February 2010 to November 22, 2010, the Plan overpaid Hines by $9,361.10.

Defendants contend they are entitled to seek repayment of overpayments because the terms of the Plan created an equitable lien by agreement. As support for this contention, Defendants cite to §§ 1.24 and 4.06(a) of the Plan,[6] as well as a reimbursement agreement signed by Hines as a prerequisite for receiving LTD benefits under the Plan.

Defendants contend the following documents in Hines' claim file support their assertion that Hines received of a lump-sum retroactive SSDI award which caused an overpayment in the amount of $9,361.10: (1) an "SSDI Award Summary" from "The Advocator Group" attaching a Notice of Award; (2) a chart calculating the amount of overpayment; and (3) letters from Sedgwick to Hines demanding the amount of overpayment.

Although Hines' motion for summary judgment acknowledges that she applied for SSDI benefits, she does not address Defendants' assertion that she received a lump-sum retroactive SSDI award. Nor does she address the amount of any such award received. Accordingly, the Court defers ruling on Defendants' motion for summary judgment as to their counterclaim for overpayment and will conduct a hearing on Defendants' counterclaim for overpayment.

---

[6] Defendants appear to cite the wrong sections of the Plan, because §§ 1.24 and 4.06(a) do not address SSDI awards and reimbursement of overpayments made by the Plan.

IV. **CONCLUSION**

It is **ORDERED AND ADJUDGED** that Plaintiff's motion for summary judgment is **DENIED** and Defendants' motion for summary judgment is **GRANTED IN PART AND DEFERRED IN PART** as follows:

A. As for Plaintiff's ERISA claim for LTD benefits, Plaintiff's motion for summary judgment is denied and Defendants' motion for summary judgment is granted;

B. The Court defers ruling on Defendants' motion for summary judgment on Defendants' counterclaim for overpayment. A notice of hearing will issue.

**DONE AND ORDERED** at Tampa, Florida, this 20th day of November, 2013.

_Susan C. Bucklew_
SUSAN C. BUCKLEW
United States District Judge

Copies to: Counsel of Record and Parties

16